USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/20/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

GEORGE DAVIS,

                    Plaintiff,

          - against -

NEW YORK STATE DIVISION OF PAROLE,
ATTORNEY GENERAL ELIOT SPITZER, ASST.
ATTORNEY GENERAL JONATHAN SAUL,
CHAIRMAN ROBERT DENNISON, WARDEN,
ANNA M. KROSS (C-95),(SPO) CHRISTOPHER
WROBLESKI, PAROLE OFFICER P.
BRATHWAITE, PAROLE OFFICER BIZRAM,

                    Defendants.

------------------------------------------X

**MEMORANDUM AND ORDER**

07 Civ. 5544 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff George Davis brings this suit, pro se, under 42
U.S.C. § 1983 seeking damages for having been remanded on April 14,
2004 without thereafter receiving a timely preliminary parole
revocation hearing.  Presently before the Court is a motion to
dismiss made by various defendants on a number of grounds including
failure to state a claim on which relief may be granted, failure to
allege personal involvement, absolute immunity, qualified immunity,
and Eleventh Amendment immunity.

     For the reasons that follow the motion is granted in part and
denied in part.

## BACKGROUND[1]

### I. Davis's Remand and the Lack of A Preliminary Hearing

During a parole office visit on April 14, 2004, George Davis was arrested for allegedly violating at least six separate conditions of his parole.[2] Senior Parole officer Christopher Wrobleski Parole signed violation warrant #418588, and the arrest was made by Davis's Parole Officer, Patrice Brathwaite, and her partner, Toolchand Bisram.[3]

After Davis was arrested, he was given a Notice of Violation Form (Form 9011), on which he could either request to have a preliminary parole revocation hearing ("preliminary hearing") by checking the box marked "I DO wish to have a preliminary hearing," or he could waive his right to such a hearing, by checking the box marked "I do NOT wish to have a preliminary hearing."[4] According to Davis, he wanted a preliminary hearing and checked the box so indicating.

---

[1] The facts set forth in the complaint and its various annexes are accepted as true for purposes of this motion.

[2] It is unclear from the record what Davis's underlying offense was, or why he is currently incarcerated.

[3] Compl. at 17 ¶ 1. Davis has submitted a copy of the warrant #418588, dated April 14, 2004, as well as a copy of the Violation of Release Report, which charged that Davis violated his release in six separate ways, including by using cocaine, failing to report, failing to permit his parole officer to visit his residence, testing positive for THC, and having on his possession summonses which indicated contact with law enforcement that he had also failed to report. See also Affidavit of Andrew Meier, Ex. A, Dec. 9, 2004 Hr'g. Tr. at 7:1-25 (hereinafter "Hr'g. Tr.").

[4] Compl. at 17 ¶¶ 2-3.

Under New York Executive Law § 259-i(3)(c)(McKinney 2007), a parolee arrested pursuant to a parole violation warrant and held pending parole revocation proceedings is entitled to a preliminary hearing within 15 days of his arrest, at which hearing a finding of probable cause must be made in order for the Division of Parole to continue to pursue parole revocation. Such a parolee is then entitled to a final parole revocation hearing within 90 days of the probable cause determination. N.Y. Exec. ¶¶259-i(d),(f)(McKinney 2007). If a parolee waives his right to a preliminary hearing, then the final hearing must take place within 90 days of the date of the waiver. Id.

A few hours after his arrest, Brathwaite and Bisram came to Davis's cell and told him that he was being taken to the Bernard B. Kerik Complex ("BBKC") for booking.[5] Davis alleges that at this time he returned the Notice of Violation Form, and told Brathwaite that he wished to have a preliminary hearing. Brathwaite then read the Notice of Violation Form out-loud, in front of Bisram and Wrobleski, and told Davis that he would be notified within fifteen days of the time and place of his preliminary hearing.[6]

Upon being transferred to the BBKC, Davis was processed, and given a copy of his Violation of Release Report as well as his Notice of Violation form. Once again, Davis alleges, Brathwaite

---

[5] The name of the Bernard B. Kerik Complex has since been changed.

[6] Compl. at 18 ¶ 6.

told him he would soon be notified of the time and date of his preliminary hearing.[7]

Fourteen days then passed, and Davis had not yet received a date for a preliminary hearing.  On the fourteenth day, April 28, 2004 Davis tried calling Brathwaite, Bisram and Wrobleski numerous times, but his calls were not answered.[8]  The next day, April 29, Davis tried calling again, and this time managed to get in touch with Wrobleski, who informed him that he was aware that Davis had requested a preliminary hearing, and that one would be provided "as scheduled."[9]

## II. Davis's Two Habeas Petitions

On April 30, 2004, sixteen days after his remand, and still not having received a date for a preliminary hearing, Davis filed a pro se petition for a writ of habeas corpus in New York County, under Index # 04-401538.

While Davis's habeas petition was pending in New York County, Davis was relocated to the Anna M. Kross Center ("AMKC") on Rikers Island (in Bronx County).  In the interim, Davis also contacted the Legal Aid Society, Parole Revocation Defense Unit, and requested representation.   On June 7, 2004, Davis's Legal Aid lawyer, George

---

[7] Compl. at 18 ¶ 9.

[8] Davis maintains that he tried calling about twelve times.  Compl. at 18 ¶ 11.

[9] Compl. at 19 ¶ 13.

-4-

Gabriel, filed a second habeas petition on Davis's behalf in the Supreme Court, Bronx County.

In response to Davis's first habeas petition in New York County, the State submitted an affidavit from Officer Brathwaite, dated June 7, 2004. In this affidavit, Brathwaite avers that Davis initially indicated to her that he wished to waive a preliminary hearing and proceed straight to a final parole revocation hearing, which could be scheduled for April 26, 2004.[10]  According to Brathwaite, Davis inadvertently checked the wrong box on the Notice of Violation Form.  Upon realizing Davis's mistake, Brathwaite claimed she went to the BBKC to re-serve Davis with the Notice of Violation Form so that he could check the appropriate box and waive the preliminary hearing, as he had wanted to.  She claimed she went to the BBKC on April 24, 2004, and Davis once again "unequivocally" expressed his desire to waive his preliminary hearing.[11]  Thus, Brathwaite instructed Davis to check the box that reads "I do NOT wish to have a preliminary hearing," and initial the change. Brathwaite averred that Davis initialed the change "without reservation."[12]

---

[10] A copy of the Affidavit of Parole Officer Brathwaite, dated June 7, 2004 was attached to the complaint.

Although not part of her original June 7 affidavit, Brathwaite's later testimony was that once she explained the preliminary hearing process to Davis, Davis understood that a preliminary hearing would be unnecessary because the officers could easily demonstrate probable cause to arrest him. Hr'g. Tr. 11:18-23.

[11] Brathwaite June 7, 2004 affidavit at ¶ 8.

[12] Brathwaite June 7, 2004 affidavit at ¶ 8.  Cf. Compl. at 21 ¶ 25.

For his part, Davis labels Brathwaite's June 7 affidavit "perjurious,"[13] and denies that Brathwaite ever visited him at the BBKC on April 24, 2004 or that he ever expressed a desire to waive a preliminary hearing. He claims that Brathwaite doctored the Notice of Violation Form, and "forged" his initials on the change.

In a Decision and Order dated June 15, 2004, Justice Michael R. Ambrecht of the Supreme Court, New York County found Brathwaite's affidavit credible. Accordingly, he found that the State had established that Davis had clearly waived his right to a preliminary hearing, and he dismissed Davis's first habeas petition.[14]

In the interim, with respect to Davis's second habeas in the Bronx, an initial conference was scheduled before Justice Michael Gross in the Bronx on July 14, 2004.

## III. Davis's Final Hearing is Repeatedly Adjourned

While Davis's habeas petitions were pending, Davis's final parole revocation hearing was adjourned repeatedly. Davis's Notice of Violation Form indicates that the date originally scheduled for his final hearing was April 26, 2004. It is unclear from the record why no final hearing took place on this date. Davis has attached to his complaint documents labeled "Results of Parole

---

[13] Compl. at 8 ¶ 7.

[14] People ex rel. George Davis v. Warden, No. 04-401538, slip op. at 3 (Sup. Ct. June 15, 2004).

Revocation Hearings," ("Results") which are computer printouts issued by the Division of Parole which show the date of scheduled hearings and the various adjournments. In the Results, the first date scheduled for the final hearing appears to be May 5, 2004. The Results indicate that this May 5 date was adjourned at the request of the Division of Parole until May 21, 2004. However, the May 21 date, and the following six dates after that - between June, 2004 and December, 2004 - were all adjourned at the request of Davis's Legal Aid lawyer.[15]

Due to the adjournments, Davis never received a parole revocation hearing - preliminary or final - before his second habeas petition was granted by Justice Gross on December 9, 2004. Defendants point out that the adjournments were tactical on the part of defense counsel, because if Davis had received a final hearing, and a declaration of delinquency, it would have mooted the issue then pending in his habeas petition as to whether he had in fact waived his right a timely preliminary hearing. See People ex rel. Frett v. Warden, 25 A.D.3d 472, 807 N.Y.S.2d 295 (1st Dep't. 2006)(a final hearing determination of delinquency renders moot a pending habeas petition claiming procedural errors regarding the preliminary hearing).

---

[15] As discussed below, infra note 30, there is a small, unexplained gap in the dates covered by the Results for the period between November 19, 2005 and December 7, 2004.

-7-

## IV. The Results of Davis's Second Habeas Petitions

At the initial conference on Davis's second habeas petition Davis was represented by George Gabriel from Legal Aid, and the State was represented by Assistant Attorney General Jonathan Saul, a defendant in this case. Gabriel argued to Justice Gross that Davis disputed the factual assertions made by Officer Brathwaite in her affidavit of June 7, 2004, and he requested a subpoena for the log books from the BBKC to determine whether Officer Brathwaite had in fact ever visited Davis on April 24, 2004, as she claimed. Justice Gross agreed to sign such a subpoena on condition that if the subpoenaed records confirmed Officer Brathwaite's account of her visit, then Davis would withdraw the second habeas petition, but, if the records contradicted Brathwaite's affidavit, then Gabriel would ask Justice Ambrecht to revisit his earlier decision.[16]

The subpoenaed records were eventually turned over on August 2, 2004. The records contained log books from both the front gate of the BBKC and the counsel room (where Brathwaite claimed that she met with Davis on April 24, 2004). The log books do not contain any entry showing Brathwaite's presence at the BBKC on April 24, 2004.[17]

---

[16] Compl. at 20 ¶ 23.

[17] Davis appended the log books to his complaint, and all parties here appear to be in agreement that the log books do not contain any record of Officer Brathwaite's visit. In fact, Brathwaite herself admitted that the log books do not contain any such entry at the factual hearing held before Justice Gross, on Dec. 9, 2004. See Hr'g. Tr. 16:1-4.

Following receipt of these records, Davis's lawyer asked Justice Ambrecht to reconsider his denial of habeas relief, but Justice Ambrecht deferred to the jurisdiction of the Bronx court. Thus, Davis's Bronx petition went forward.   Both parties made submissions; Brathwaite submitted a second affidavit, dated September 28, 2004; and a fact-finding hearing was held before Justice Gross on December 9, 2004.

At the fact-finding hearing, Officer Brathwaite testified consistent with her June 7, 2004 affidavit that she visited Davis on April 24, 2004 at the BBKC; that Davis once again expressed his unequivocal desire to waive a preliminary hearing; and that Davis then re-executed the Notice of Violation Form so as to waive a preliminary hearing.[18]  Although Davis now alleges that Brathwaite "confessed" at this hearing that she forged Davis's initials and doctored his Notice of Violation Form,[19] this is not an accurate description of Brathwaite's testimony.    Brathwaite only acknowledged one aspect in which her live testimony differed from her June 7, 2004 affidavit.    In her June 7, 2004 affidavit, Brathwaite had said that she went to AMKC on Rikers Island to meet with Davis, but upon arrival was told that Davis was actually still at the BBKC, and so she went to meet with him at the BBKC.    By

---

[18] See generally Hr'g. Tr. at 15-20.  We may take judicial notice of the transcript of the hearing because it is referenced throughout Davis's complaint and integral to it.   See Kavowras v. New York Times Co., 328 F.3d 50, 57 (2d Cir. 2003).  Both Davis and the defendants submitted portions of the transcript from the Dec. 9, 2004 hearing in conjunction with the instant motion.

[19] Compl. at 6, 16.

-9-

contrast, in her live testimony, she said that she had determined Davis's location by calling a Department of Corrections hotline.[20]

Notwithstanding Davis's exaggerated claims of Brathwaite's "confession," it is clear that Officer Brathwaite's testimony at the hearing was internally inconsistent in certain respects, and contradicted by other evidence.  For example, Brathwaite testified that she met with Davis at the "housing unit" at BBKC, but on cross-examination, she admitted that she could not remember where she met with Davis, but she "usually" met with inmates at the BBKC in the housing unit.[21]  Then, Davis's attorney called to the stand the police captain in charge of security at BBKC who testified that, in his experience, no parole officer was ever permitted to visit with an inmate in the "housing area" of the BBKC.[22]

At the end of the hearing, Justice Gross found that the Division of Parole had not properly established that Davis had effectively waived his right to a timely preliminary hearing, and thus granted Davis's habeas petition.[23]

Davis has since been re-incarcerated.

---

[20] Officer Brathwaite maintains that she did not draft the affidavit, and that after reviewing it she pointed out to the Assistant Attorney General who drafted it that she never went to Rikers Island to look for Davis, but was told that "it was okay." Hr'g. Tr. 39:23 - 40:3.

[21] Hr'g. Tr. 47:19 - 48:5.

[22] Hr'g. Tr. 100:3-10.

[23] Hr'g. Tr. 101:19-23.

-10-

## DISCUSSION

### I. Legal Standard on a Motion to Dismiss

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint," Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1975 (2007) (quotation marks omitted), and "draw all inferences in the light most favorable to the non-moving party." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). Additionally, "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S.Ct. 2197 (2007) (per curiam). Nevertheless, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness" Id. In the end, the plaintiff must present factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965.

In assessing the motion, the court is not limited to the face of the complaint, but "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

## II. Analysis

Defendants the New York State Division of Parole; Robert Dennison (former Chairman of the New York State Division of Parole); Jonathan Saul (former Assistant Attorney General); Senior Parole Officer Christopher Wrobleski; Parole Officer Patrice Brathwaite; and Parole Office Toolchand Bisram (collectively "defendants") move to dismiss the complaint as against them on a variety of grounds, including failure to state a claim, failure to allege personal involvement, absolute or qualified immunity, and Eleventh Amendment immunity.[24]

We first examine the substance of Davis's claims, and then the various defenses.

### A. Failure to State A Claim

While the defendants argue that the complaint fails to state a claim on which relief may be granted, we disagree, at least with respect to Davis's claim that he was denied his Fourteenth Amendment right to procedural due process.

---

[24] There are two non-moving defendants: former Attorney General Eliot Spitzer and the Warden of the Anna M. Kross Center. However, as discussed below, plaintiff has not sufficiently plead any claims against either of these defendants, and the claims against them are dismissed.

For the sake of completeness, we note that there is a dispute between the parties over whether Eliot Spitzer was ever properly served with a copy of the summons and complaint. The Attorney General's office, (counsel to the State Defendants) maintains that to their knowledge Eliot Spitzer has not been served. See State Defendants Memorandum of Law in Support of Motion to Dismiss at 1. Yet, the record indicates that Eliot Spitzer was served on December 26, 2007. Plaintiff Davis, for his part, submits that he served both Eliot Spitzer and the current Attorney General, Andrew Cuomo. See Letter from George Davis to Hon. Naomi Reice Buchwald (October 10, 2007)(on file with Chambers). Our holding renders this issue moot.

The crux of Davis's complaint is that he did not receive a preliminary parole revocation hearing within 15 days of being remanded, as explicitly required by New York Executive Law § 259-i(3)(c)(i). Defendants point out, correctly, that a claim of a violation of a state law procedural requirement does not give rise to a section 1983 claim in the absence of a constitutional violation. See, e.g., Rivera v. Wohlrab, 232 F.Supp.2d 117, 123 (S.D.N.Y. 2003)("Violations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.")(internal quotation omitted).

Further, defendants argue that there was no constitutional violation in this case because Davis received all the due process required under the Supreme Court's decision in Morrissey v. Brewer, 408 U.S. 471 (1972)(setting forth the minimum due process standards required by the Fourteenth Amendment for parole revocation proceedings). State Defendants point out that Davis would have received his final parole revocation hearing significantly earlier had his own lawyer not sought so many adjournments. Defendants also argue that Davis was eventually granted habeas corpus relief, which they assert was the only relief to which he was entitled.

However, as explained below, reading the facts in the light most favorable to Davis he was denied any kind of hearing or probable cause determination within thirty-seven days of his

remand.    (After the thirty-seventh day, his own lawyer began adjourning the scheduled hearings).    Numerous federal and state courts have held that delays of greater than thirty days in providing a probable cause determination to detained parolees are constitutionally impermissible.    Thus, while the failure to provide Davis a preliminary hearing *within 15 days* may only be a violation of a state procedural requirement, and not necessarily a federal constitutional violation, the failure to provide Davis any hearing within thirty-seven days, if in fact he had not waived his right to one, may have been a constitutional violation.

### 1. <u>Morrissey</u> and the requirement of a preliminary hearing

In <u>Morrissey</u>, the Supreme Court set forth the minimum due process requirements for parole revocation proceedings.[25] The Court outlined a two-step process: a preliminary hearing and a final hearing.    The preliminary hearing, which must be held "promptly" after a parolee is arrested and detained, is an informal inquiry "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." 408 U.S. at 485.    The Supreme Court stressed that a preliminary hearing should be held

---

[25] We note that <u>Morrissey</u> also made clear that parolees have a significant Fourteenth Amendment liberty interest in continuing to stay on parole rather than be detained.    "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. . . . Its termination calls for some orderly process, however informal." 408 U.S. at 482.

close - both in terms of time and place - to the arrest so as to
give a parolee a chance to preserve live testimony in case the
final hearing is held significantly later or farther away from the
place the alleged incident:

> There is typically a substantial time lag
> between the arrest and the eventual
> determination by the parole board whether
> parole should be revoked. Additionally, it
> may be that the parolee is arrested at a place
> distant from the state institution, to which
> he may be returned before the final decision
> is made concerning revocation. Given these
> factors, due process would seem to require
> that some minimal inquiry be conducted at or
> reasonably near the place of the alleged
> parole violation or arrest and as promptly as
> convenient after arrest while information is
> fresh and sources are available.

408 U.S. at 485. Although noting that due process is a "flexible"
standard that calls for "such procedural protections as the
particular situation demands," 408 U.S. at 481, the Court went on
to outline the basic structure of a preliminary hearing: it must be
conducted by an "independent officer," (someone not involved in the
case, but not necessarily a judicial officer); the parolee must
receive notice of the hearing; the parolee may appear and speak in
his own behalf, and bring letters, documents, or individuals who
can give relevant information; on request of the parolee, a person
who has given adverse information on which parole revocation is to
be based is to be made available for questioning in his presence;[26]

---

[26] The Court also noted, however, that if the hearing officer determines
that an informant would be subjected to risk of harm if his identity were
disclosed, he need not be subjected to confrontation and cross-examination. 408
U.S. at 487.

and, finally, the hearing officer must make a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position.  Id. at 485-487.

Following a preliminary hearing, the second stage is the final revocation hearing itself.  As the Supreme Court wrote in Morrissey, this hearing "must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation."  408 U.S. at 488.

A year after Morrissey, the Court reaffirmed its holding in Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973).  In Gagnon, Court emphasized that "Morrissey mandated preliminary and final revocation hearings," 411 U.S. at 786, and reiterated the essential features of a preliminary hearing: "[a]t the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations . . . an opportunity to appear and to present evidence on his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing."  411 U.S. at 786.

### 2. Timeliness and "Unitary" Hearings

In the years since, federal and state courts have addressed two central questions left open by Morrissey and Gagnon - (1)

exactly how many days a parolee may be held without some determination as to probable cause; and (2) whether a state may combine the preliminary hearing and final hearing into a so-called "unitary" proceeding.

Courts have generally upheld the provision of timely unitary hearings in place of separate preliminary and final hearings. In State v. Myers, 86 Wash.2d 419, 545 P.2d 538, 544 (Wash. 1976)(en banc), the Supreme Court of Washington upheld Washington State's policy of providing a unitary revocation hearing within thirty days of the issuance of an arrest warrant. Similarly, the Ninth Circuit in Pierre v. Washington State Bd. Of Prison Terms & Paroles, 699 F.2d 471, 473 (9th Cir. 1983) held that a preliminary hearing is not required if a state provides a final hearing within twenty-one days. In Ellis v. District of Columbia, 84 F.3d 1413 (D.C. Cir. 1996), the D.C. Circuit upheld certain aspects of the District of Columbia's parole revocation process, which granted a preliminary "interview," but then offered a final hearing within 30 days of after notice of a warrant's execution. Judge Tatel dissented on the grounds that thirty days was too long for a probable cause determination. He cited with approval dicta in a Seventh Circuit case, Luther v. Molina, 627 F.2d 71, 75 n.3 (7th Cir. 1980), which construed Morrissey to require a preliminary hearing within ten days of detention. 84 F.3d at 1430-31 (Tatel, J. dissenting)).

Yet, courts have consistently struck down state regulations that do not afford either a unitary or preliminary hearing within

-17-

thirty days of detention.   For instance, in <u>Valdivia et al. v.</u>
<u>Davis</u>, 206 F.Supp.2d 1068 (E.D. Cal. 2002), a federal district
court held that California violated parolees' procedural due
process rights by offering a unitary parole revocation hearing
within approximately forty-five days of remand.[27]   206 F.Supp.2d at
1078.   The court wrote that "California's system of allowing a
delay of up to forty-five days or more before providing the parolee
an opportunity to be heard regarding the reliability of the
probable cause determination does not [pass constitutional
muster]."   <u>Id.</u>   (Following Judge Tatel's dissent in <u>Ellis</u>, the
<u>Valdivia</u> court also questioned whether a unitary hearing was
sufficient under <u>Morrissey</u>, but did not resolve the question. <u>Id.</u>[28])
Similarly, in <u>L.H. et al. v. Schwarzenegger</u>, 519 F.Supp.2d 1072
(E.D. Cal. 2007), the court struck down a California regulation
concerning juvenile parole revocation proceedings which afforded a
hearing within sixty days of remand.   The court noted that "Even if
there is some question as to whether a separate preliminary hearing
must be held in order to satisfy the demands of due process, it is
clear that the law requires a probable cause determination be made
'promptly' . . . . it does not appear that any court has indicated

---

[27] Under the regulation, the 45 day period was "advisory" and not a strict
deadline.   206 F.Supp.2d at 1070.

[28] The argument that a "unitary" hearing is insufficient is predicated on
the different underlying purposes for preliminary and final hearings.   As the
Fifth Circuit has observed, "The [Supreme] Court viewed the preliminary hearing
as a tool for preserving live testimony . . . as important to assure accurate
findings of fact." <u>Farrish v. Mississippi State Parole Bd.</u>, 836 F.2d 969, 977
(5th Cir. 1988).

that a delay of more than thirty days would be justifiable." 519
F.Supp.2d at 1082-84 (citations omitted).

Thus, while a "unitary" hearing may suffice to provide
detained parolees the requisite due process, courts addressing the
issue have consistently indicated that a delay of any more than
thirty days for such a hearing is constitutionally insufficient
under <u>Morrissey</u>.[29]

### 3. Davis's Procedural Due Process Claim

Thus, on its face, Davis's complaint states a claim for a
violation of <u>Morrissey</u>. It is undisputed that Davis never received
a preliminary hearing, and, accepting the allegations in the
complaint as true, he did not waive his right to one.

Further, on this record, we cannot say that the State "cured"
the procedural defect by offering Davis a timely final revocation
hearing. Under the case law, it appears that any "unitary" hearing
must have taken place within thirty days of April 14, 2004 - the
date of the issuance of the warrant and Davis's arrest. There is
a significant factual question as to why the initial April 26, 2004
date for his final revocation hearing was adjourned. The

---

[29] We note that in discussing the due process requirements of preliminary
hearings, courts have turned both to <u>Morrissey</u> and the three-part balancing test
originally set forth in <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976). This is
appropriate given the Supreme Court's direction to apply the <u>Matthews</u> test
regardless of the context in which procedural due process claims arise.
<u>Greenholtz v. Inmates, Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 18
(1978). However, as suggested by these same courts, analysis under <u>Morrissey</u> and
<u>Matthews</u> generally yield the same results. <u>See</u>, <u>e.g.</u>, <u>Valdivia</u>, 206 F.Supp.2d at
1078, especially in light of <u>Morrissey</u>'s direction that due process in the parole
revocation context is a "flexible" standard.  408 U.S. at 481.

subsequent adjournment, from May 5, 2004 to May 21, 2004 was clearly at the request of the Division of Parole, and all subsequent adjournments were at the request of Davis's counsel. Thus, reading the facts in the light most favorable to Davis, he was held from April 14 until May 21 - a total of thirty-seven days - without a proper probable cause determination having been made. Of course, the adjournments after May 21 which were at the request of Davis's counsel are attributable to Davis, and therefore do not count towards any constitutional violation.[30]

### 4. Appropriate Remedy

Defendants argue that even if a constitutional violation occurred in this case, Davis's suit should be dismissed because he ultimately received habeas corpus relief, which they argue was "all the relief to which he is entitled on the facts alleged."[31]

Although a federal district court in Georgia recently agreed with this proposition in a similar case,[32] there is ample case law

---

[30] As the defendants point out, there is one unexplained gap in the Results, for the period between November 19, 2004 and December 7, 2004. Presumably this gap exists simply because one of the Results is missing. However, even if this adjournment were again at the request of the State, after so many adjournments on the part of Davis's counsel, the state should not be liable for this time.

[31] State Defendants' Memorandum of Law in Support of Motion to Dismiss, at 14-15.

[32] In <u>Anderson v. Georgia State Pardons and Parole Bd. et al.</u>, No. 03-1154-CV-JOF-1 (D.Ga. filed Apr. 25, 2003) <u>aff'd</u> 165 Fed.Appx. 726, 730 (11th Cir. 2006), plaintiff's parole was revoked without a preliminary or final parole revocation hearing. The warrant for his arrest was quashed by the time he filed suit under § 1983 against the Chairman of the Georgia State Board of Pardons and others, and the District Court held that the quashing of the warrant was "the only remedy to which [plaintiff] was entitled." 165 Fed.Appx. at 730. The

that holds that a violation of procedural due process rights may give rise to nominal damages, even if no compensatory damages can be proven. As the Supreme Court wrote in <u>Carey v. Piphus</u>, 435 U.S. 247, 266 (1978), "the right to procedural due process is 'absolute,'" and the denial of that right is "actionable for nominal damages without proof of actual injury." <u>See also</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 13 & n.12 (1980)(noting, in the context of a procedural due process § 1983 claim that, "even if [a] subsequent hearing accorded petitioner minimized or eliminated any compensable harm resulting from the initial denial of procedural safeguards, his constitutional claim is nonetheless actionable. . . . for nominal damages without proof of actual injury.")(citations omitted); <u>Kerman v. City of New York</u>, 374 F.3d 93, 123 (2d Cir. 2004)("For example, when a defendant has deprived the plaintiff of liberty or property without affording him a hearing as required by the Due Process Clause, but the defendant proves that the adverse action would have been taken even if a proper and timely hearing had been held, the plaintiff has not proved compensable injury and is entitled only to nominal damages.") Thus, at a minimum, Davis may be entitled to nominal damages.

Indeed, a number of previous plaintiffs have sustained section 1983 suits for the denial of due process in connection with

_____

Eleventh Circuit affirmed, but "on the alternate ground that [Chairman of the Board] was immune from suit for monetary damages." <u>Id.</u> at 730. Although the extent to which the Eleventh Circuit concurred with the district court is not entirely clear from the affirmance on "alternate" grounds, the availability of nominal damages for procedural due process violations seems sufficiently well-established.

preliminary parole revocation hearings.  For example, in <u>Alvarado</u> <u>v. City of New York et al.</u>, 482 F.Supp.2d 332 (S.D.N.Y. 2007)(Marrero, J.), the plaintiff alleged that his parole was revoked without a preliminary hearing, and he had not waived his right to such a hearing.  The facts showed that plaintiff had signed a Notice of Violation Form, but had not checked either the box indicating that he wished to have a preliminary hearing, or the box indicating that he wished to waive one.  He then did not receive a preliminary hearing.  At his final hearing, the Division of Parole ultimately withdrew all charges.  Alvarado then brought a § 1983 action against his parole officers.  Judge Marrero granted the defendants' summary judgment on a host of claims for false arrest and illegal search, but denied summary judgment on Alvarado's denial of due process claim, since "Alvarado did not have a preliminary hearing, and on the record before it the Court is unable to find to find that there is no genuine issue of material fact as to whether Alvarado knowingly, intelligently, and voluntarily waived this important right."  482 F.Supp.2d at 340. Further, the court denied the defendants qualified immunity because "a reasonable parole official knows tht an arrested parolee has a right to a preliminary hearing and denying that clearly established right by procuring an uninformed waiver would not be objectively reasonable."  482 F.Supp.2d at 340.  The suit ultimately settled.

Similarly, in <u>Farrish v. Mississippi State Parole Bd.</u>, 836 F.2d 969 (5th Cir. 1988), the Fifth Circuit sustained a District

Court's grant of summary judgment to a parolee who was not allowed to confront an adverse witness at his preliminary hearing. Although the Fifth Circuit dismissed claims against various parole officers involved in the hearing on the grounds of absolute immunity, it sustained summary judgment against the Mississippi Commissioner of Corrections, on the grounds that the Commissioner had failed to adopt policies and procedures that allowed parolees to confront adverse witnesses at preliminary parole revocation hearings, as was their clearly established Fourteenth Amendment right under Morrissey. The Fifth Circuit wrote, "Thus we conclude, without difficulty, that an official who failed to establish adequate policies or procedures to govern a preliminary hearing in such an elementary case should have known that his conduct violated a clearly established right." 836 F.2d at 978. In response to the argument that a grant of habeas was the appropriate remedy, the Fifth Circuit noted the various purposes served by preliminary hearings, and concluded: "allowing a parolee to seek a writ of habeas corpus is significantly different from providing the pre-deprivation procedures required by Morrissey." 836 F.2d at 973.

Of course, the extent of damages is a central issue. In order for Davis to be entitled to compensatory damages, he will have to prove actual injury - that is, he must prove that had a preliminary hearing been promptly provided, as constitutionally required, the presiding officer would not have found probable cause to detain him and he would have been released. On the facts alleged, we are

skeptical that Davis will be able to prevail on this point given the allegation that he violated at least six separate conditions of his parole, including by testing positive for cocaine and THC and being issued others summonses by the police that he failed to report. The State will likely be able to provide sufficient documentary evidence to support these allegations. Nevertheless, the question of what would have happened at a preliminary parole revocation hearing cannot be determined at this stage in the proceedings.

Finally, we note for the sake of completeness that even if Davis could show a lack of probable cause to remand him, the maximum amount of time for which he might be entitled to compensatory damages is seven days - the difference between the constitutionally permissible window in which to provide some preliminary hearing, and the date on which his lawyer began adjourning his final revocation hearing. In this context, Davis's request for upwards of $42 million in compensatory and punitive damages is patently baseless.[33]

---

[33] In <u>Memphis Community Sch. Dist. v. Stachura</u>, 477 U.S. 299 (1986), the Supreme Court established the basic parameters for awarding compensatory damages in § 1983 actions. The Court held that when "§ 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." 477 U.S. at 306. To that end, "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in [§ 1983] cases," and "nominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury." <u>Id</u>. at 308 & n. 11, 310.

## B. Failure to Allege Personal Involvement

Defendants next argue that plaintiff's claims must be dismissed against all defendants except for Officer Brathwaite because there are no allegations of personal involvement in any wrongdoing.

The law is well-established that the personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under section 1983. <u>Moffit v. Town of Brookfield</u>, 950 F.2d 880, 886 (2d Cir. 1991)(<u>citing</u> <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977). Typically, a defendant must either have directly participated in the violation, or have had some direct supervisory responsibility. The Second Circuit has set forth that personal involvement of a supervisory defendant may be shown through evidence that:

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

<u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995). <u>See also</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 536 (2d Cir. 1993) ("[A] supervisory official cannot be held liable under § 1983 on a theory of respondeat superior.").

Here, the alleged constitutional deprivation is the denial of a preliminary parole revocation hearing. Defendants Robert Dennison, former Chairman of the New York State Division of Parole; Eliot Spitzer, former Attorney General; and the Warden of the Anna M. Kross Center are named in the caption but not mentioned anywhere else in the body of the complaint, and are not alleged to have played any direct or even supervisory role in denying Davis a preliminary hearing.    It appears that these defendants are sued solely on a theory of respondeat superior, and thus all claims against these defendants are dismissed.[34]

Defendant Jonathan Saul's only alleged involvement is that he represented the Division of Parole at Davis' habeas proceedings in Bronx County, and submitted an Affirmation in Opposition to Davis's petition. Davis does not allege, however, that Saul was in any way involved in denying him a preliminary hearing, or that Saul committed any other constitutional violations.    Therefore, the claims against Saul are dismissed for failure to allege personal involvement, or, as discussed below, because he is entitled to absolute immunity.    See infra II.C.

The only remaining defendants, therefore, are the three parole officers, Wrobleski, Bisram and Brathwaite.  State Defendants argue that the claims against Wrobleski and Bisram, at least, must be dismissed for failure to allege personal involvement.    We agree

---

[34] Because Eliot Spitzer has not appeared in this action, nor has the Warden of the Anna M. Kross Center, this dismissal is sua sponte.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

with respect to Officer Bisram.  The only allegations as to Officer Bisram are that Bisram participated in Davis's arrest, was present when Davis informed Brathwaite that he wished to have a preliminary hearing, and that Davis could not get in touch with Bisram by telephone on April 28 or April 29, 2004.  These allegations alone do not suffice to state a claim of Bisram's direct involvement in the denial of Davis's procedural due process rights.  Crucially, Davis does not allege that Bisram was aware of or played any role in altering Davis's Notice of Violation Form.

As to Officer Wrobleski, however, construing the complaint liberally, and mindful that we are only at the pleading stage, we find that Davis has sufficiently alleged Wrobleski's supervisory liability. Davis alleges that Wrobleski was present at Davis's arrest, and when Davis informed Brathwaite that he wished to have a preliminary hearing.  Additionally, Davis alleges that he spoke to Wrobleski by telephone on April 29, 2008 and informed him that he had not received a preliminary hearing in the fifteen days since he had been detained, although he had requested one.  Wrobleski apparently then told Davis that he would be receiving one "as scheduled."  Thus, it may be found that Wrobleski, after being informed of a violation, failed to remedy the wrong.  Although we are mindful that, as discussed above, the failure to provide a preliminary hearing within fifteen days is a violation of a New York procedural rule, and not necessarily a constitutional deprivation in and of itself, nevertheless, reading these facts in

the light most favorable to Davis, Davis may be able to show under some hypothetical set of facts that Wrobleski was aware of a pending constitutional violation, and failed to remedy the wrong. Thus, we decline to dismiss Senior Parole Officer Wrobleski at this stage in the proceedings.

### C. Absolute or Qualified Immunity

The next stage in our analysis is whether either of the remaining defendants - Brathwaite and Wrobleski - are shielded from Davis's claims by absolute or qualified immunity.

### 1. Absolute Immunity

Absolute immunity from suit is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Bernard v. County of Suffolk, 356 F.3d 495, 502 (2d Cir. 2004). "Absolute immunity is accorded to judges and prosecutors functioning in their official capacities and, under certain circumstances, is also extended to officials of government agencies performing certain functions analogous to those of a prosecutor or a judge." DiBlasio v. Novello, 344 F.3d 292, 296 (2d Cir. 2003)(citing Butz v. Economou, 438 U.S. 478, 515 (1978). In considering whether the procedures used by the agency are sufficiently similar to judicial process to warrant a grant of absolute immunity, courts employ a "functional approach," Cleavinger v. Saxner, 474 U.S. 193, 201-02 (1985) (citing Harlow v.

-28-

Fitzgerald, 457 U.S. 800, 810 1982)), and look to whether the actions taken by the official are "functionally comparable" to that of a judge or a prosecutor. Butz, 438 U.S. at 513; see also Imbler v. Pachtman, 424 U.S. 409, 423 n. 20 (1976).

In the context of parole revocation proceedings, the Second Circuit has held that parole officers are entitled to absolute immunity when they make a "discretionary decision to issue the warrant and initiate the parole revocation 'prosecution.'" Scotto v. Almenas, 143 F.3d 105, 113 (2d Cir. 1998). Parole officers also receive absolute immunity for "presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." Id. at 112.

The Supreme Court has also extended absolute immunity to police officers testifying at judicial proceedings, reasoning that without such immunity, "[a] witness's apprehension of subsequent damages liability might induce . . . self-censorship," either by making witnesses reluctant to come forward in the first place or by distorting their testimony. Briscoe v. LaHue, 460 U.S. 325, 333, 103 (1983). Such self-censorship may "deprive the finder of fact of candid, objective, and undistorted evidence." Id. More specifically, in a case that is in many ways directly on point with this case, the Second Circuit has held that a parole officer is absolutely immune from claims for damages for submitting a false affidavit during a state habeas proceeding. Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

Under these standards, it is clear that Parole Officers Brathwaite and Wrobleski are entitled to absolute immunity for seeking a parole revocation warrant and for issuing such a warrant, and that Officer Brathwaite is entitled to absolute immunity in connection with submitting affidavits dated June 7, 2004, and September 28, 2004, and in connection with testifying as a state witness at the December 9, 2004 fact-finding hearing.[35]

However, absolute immunity does not shield Brathwaite or Wrobleski from Davis's allegation that they denied him a preliminary hearing by doctoring his Notice of Violation Form or procuring his signature knowing that he had not knowingly, intelligently, and voluntarily waived a preliminary hearing. Providing a parolee with a Notice of Violation Form is not an inherently prosecutorial or judicial function. As the Second Circuit's analysis in Scotto makes clear, "[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach." 146 F.3d at 111 (citing Snell v. Tunnell, 920 F.2d 673, 687 (10th Cir. 1990). In Scotto, for instance, the Second Circuit declined to extend absolute immunity to a parole officer for the act of recommending that a warrant issue for a parolee's arrest. The Circuit wrote that, "[the parole officer's] role was similar to that of a police officer applying for an arrest

---

[35] It is also clear that absolute immunity shields Assistant Attorney General Saul, insofar as he represented the State in Davis's habeas petition, and Robert Dennison, Chairman of the Division of Parole. See Davis v. Dennison, 219 Fed.Appx. 68 (2d Cir. 2007)(chairman of the NYS Division of Parole absolutely immune from damages in suit alleging improper denial of parole).

warrant, a function for which qualified immunity is sufficient." Id. (The Second Circuit added, "We decline to extend absolute immunity more than is strictly necessary to safeguard the independent exercise of the prosecutorial function." Id. See also White v. Cunningham, 261 Fed.Appx. 11, 13 (9th Cir. 2007)("Parole officers are not entitled to absolute immunity when performing functions similar to those of a police officer.")) Here, the act of providing a Notice of Violation Form is not akin to the judicial or prosecutorial function – it is simply not the kind of act that requires the requisite discretion or judgment.

Thus, Brathwaite and Wrobleski are not entitled to absolute immunity with respect to the allegation that they doctored Davis's Notice of Violation Form or knowingly obtained an uninformed waiver.

### 2. Qualified Immunity

"[P]ublic officials . . . are protected by qualified immunity from civil liability for actions taken in their official capacity, if those actions were objectively reasonable in light of clearly established rules then extant." Morris-Hayes v. Bd. of Educ., 423 F.3d 153, 158 (2d Cir. 2005). To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "A right is clearly established if 'in light of preexisting law the

unlawfulness [of the action taken is] apparent.'" <u>Smith v. Coughlin</u>, 938 F.2d 19, 20 (2d Cir. 1991) (per curiam) (<u>quoting</u> <u>Anderson</u>, 483 U.S. at 640.

Under <u>Morrissey</u>, the right to a preliminary parole revocation hearing was clearly established such that reasonable parole officers would know that parolees were entitled to such hearings. <u>See</u> <u>Farrish</u>, 836 F.2d at 977; <u>Alvarado</u>, 482 F.Supp.2d at 340. Reading the facts in the light most favorable to Davis, Wrobleski and Brathwaite knew that they were denying Davis a preliminary hearing, and there is no evidence to suggest that they were aware that a final hearing would be conducted within a constitutionally permissible time frame. As this Court wrote in <u>Alvarado</u>, in denying a similar qualified immunity argument, "A reasonable parole official knows that an arrested parolee has a right to a preliminary hearing and denying that clearly established right by procuring an uniformed waiver would not be objectively reasonable." 482 F.Supp.2d at 340. Accordingly, defendants Brathwaite and Wrobleski are not protected by qualified immunity on the facts alleged.

### D. Eleventh Amendment Immunity

Both Wrobleski and Brathwaite are New York State officials sued for damages in their official as well as individual capacities. However, Davis may only sue these defendants for damages in their individual capacities. <u>See</u> <u>Al-Jundi v. Estate of</u>

<u>Rockefeller</u>, 885 F.2d 1060, 1065 (2d Cir. 1989) ("[S]ection 1983 claim for damages against a state official can only be asserted against that official in his or her individual capacity"); <u>accord</u> <u>Davis v. New York</u>, 316 F.3d 93 (2d Cir. 2002); <u>see</u> <u>also</u> <u>Kentucky v.</u> <u>Graham</u>, 473 U.S. 159 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the state and is therefore barred by the Eleventh Amendment); <u>cf</u>. <u>Hafer v. Melo</u>, 502 U.S. 21, 27-31 (1991) (Eleventh Amendment does not bar actions for damages against state officials sued in their personal or individual capacities).    Accordingly, Davis's claims for damages against all individual defendants in their official capacities are dismissed.[36]

## E. Statute of Limitations

For the sake of completeness we note that Davis's due process claim is timely.    In New York, a § 1983 action must be filed within three years of the date of accrual.    <u>See</u> <u>Owens v. Okure</u>, 488 U.S. 235, 249-51 (1989); <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 225 (2d Cir. 2004).    The date of accrual for a § 1983 claim is determined by federal law.    <u>Wallace v. Kato</u>, 127 S.Ct. 1091, 1095 (2007).    In general, a claim accrues when a plaintiff knows or has

---

[36] Similarly, any claims Davis may have against the New York State Division of Parole are dismissed because the Division of Parole is a state agency that has not consented to suit.    <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89 (1984) (agencies and departments of the state are entitled to assert the state's Eleventh Amendment immunity); <u>Santiago v. New York State Dep't of Corr.</u> <u>Servs.</u>, 945 F.2d 25, 28 n. 1 (2d Cir. 1991) (department that is an agency of the state is entitled to assert Eleventh Amendment immunity).

reason to know of the injury that forms the basis of his claim. Leon v. Murphy, 988 F.2d 303, 308 (2d Cir. 1993).

Here, although Davis's complaint was not filed until June 11, 2007, which would be more than years after Davis knew or should have known of the constitutional violation, Davis himself signed the complaint on April 4, 2007.  When a plaintiff proceeds pro se and is incarcerated at the time of the filing of the complaint, the complaint is deemed filed when he gives the complaint to prison officials to be mailed to the court.  Fernandez v. Artuz, 402 F.3d 111, 113 n. 2 (2d Cir. 2005); Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993).  In this case, the earliest date on which plaintiff might have given the complaint to prison officials was April 4, 2007, the date on which he signed it.[37]  Thus, we use this date as the filing date in considering his claims.  Under any theory of accrual, April 6, 2007 is within the three year limitations period, and thus Davis's due process claim is timely.

### F. Davis's Other Claims

Finally, Davis indicates in passing in his complaint that he also brings claims for false arrest, malicious prosecution, and denial of equal protection.  Since we construe the complaint liberally, we consider these claims as well.  However, we dismiss

---

[37] Indeed, Davis's complaint was received by the Southern District Pro Se Office on April 16, 2007.

them for failing to state a claim, or, in the alternative, because they are frivolous.

To the extent that Davis raises a claim for false arrest, it is dismissed because Davis admits that he was arrested pursuant to a warrant.  Indeed, Davis himself has submitted a copy of the warrant, and he does not allege any defects with it.  It is well-established that where an individual's arrest is effectuated pursuant to a warrant, there can be no claim for false arrest or unlawful imprisonment. See Jones v. Trump, 971 F.Supp. 783, 788-89 (S.D.N.Y. 1997) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118-19 (2d Cir. 1995)); see also Coakley v. Jaffe, 72 F.Supp.2d 362, 363-64 (S.D.N.Y. 1999).

Davis's complaint also fails to state a malicious prosecution claim because he has not alleged any malice on the part of the parole officers, or a lack of probable cause to make the arrest. See McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006)("The absence of probable cause is an essential element of a claim for malicious prosecution"); see also Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004)("Because accusers must be allowed room for benign misjudgments, the New York Court of Appeals has held that the law places a heavy burden on malicious prosecution plaintiffs")(citing Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195, 734 N.E.2d 750 (N.Y. 2000)).

With respect to an equal protection violation, Davis's complaint fails to allege that any differential treatment that he

-35-

may have received was the product of impermissible considerations such as race or religion. See Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 110 (2d Cir. 2006)(to prevail on an equal protection claim, "a plaintiff must demonstrate that (1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.").

Accordingly, we dismiss all of Davis's other claims except for the denial of procedural due process.


## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part. Defendants the New York State Division of Parole, the Warden of the Anna M. Kross Center, Eliot Spitzer, Robert Dennison, Jonathan Saul and Toolchand Bisram are dismissed from this action with prejudice. The only claims that remain are those against Parole Officer Brathwaite and Senior Parole Officer Wrobleski for denial of Davis's procedural due process right in connection with his right to a preliminary hearing.

If this case has not otherwise settled before then, discovery is to be completed by November 21, 2008. Dispositive motions, if

any, are due by December 19, 2008, and if no dispositive motions
are filed this case will be considered ready for trial.

       **SO ORDERED.**

Dated:    New York, New York
           August 19, 2008

                             NAOMI REICE BUCHWALD
                             UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

George Davis
c/o Charles H. Gay Shelter for Men
One Keener Building
Wards Island, NY 10036

Andrew Hodge Meier, Esq.
Office of the Attorney General
State of New York
120 Broadway
New York, NY 10271